**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN POQUEZ, | ) Case No. 11-00328 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION TO DISMISS |
| v. | ) |
| | ) |
| SUNCOR HOLDINGS - COPII, LLC, GSM | ) |
| PARTNERS, LLC; TOWER ENERGY GROUP; | ) |
| AND DOES 1 THROUGH 20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I.    INTRODUCTION

Plaintiff Evelyn Poquez ("Plaintiff") has filed a Second Amended Complaint against defendants Suncor Holdings - COPII, LLC ("Suncor"), GSM Partners, LLC ("GSM"), Tower Energy Group ("Tower"), and Does 1 through 20, bringing a claim for violation of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. ("PMPA"), as well as state and common law claims for specific performance and declaratory relief.  ECF No. 26 ("SAC").  Suncor, GSM, and Tower (collectively, "Defendants") filed a Motion to Dismiss for failure to state a claim and lack of subject matter jurisdiction, which is fully briefed.  ECF Nos. 29 ("Mot."), 30 ("Opp'n"), 32 ("Reply").  For the reasons stated below, the Court GRANTS Defendants' Motion and dismisses this action WITH PREJUDICE.

**United States District Court**
For the Northern District of California

## II.    BACKGROUND

As it must on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court assumes the truth of the well-pleaded facts in Plaintiff's SAC.  Plaintiff alleges that she operates a Union 76 branded motor fuel station in San Francisco, California.  SAC ¶ 1. Defendants became the leasor and franchisor of the fuel station through a 2005 bulk sale.  Id. ¶¶ 1, 5, 14.  The bulk sale agreement provides for PMPA compliance and also states that the lease dealer has a right of first refusal to purchase the property. Id. ¶ 14.  On or around June 30, 2005, Plaintiff entered into an agreement with defendant GSM, the "Assignment of First Refusal," giving Plaintiff the exclusive option to purchase the premises at the appraised value.  Id. ¶ 16.  The agreement was allegedly reaffirmed in a May 2006 agreement among the parties.  Id. ¶ 17.

On or around November 24, 2010, Defendants sent Plaintiff a Notice of Nonrenewal of Plaintiff's dealership franchise agreement. Id. ¶ 21.  Defendants withdrew the Notice of Nonrenewal on February 7, 2011 and the parties entered into a new three-year franchise agreement that commenced March 2011 and expires February 2014.  SAC ¶ 23.  Plaintiff alleges this agreement was a "sham" since the underlying lease expires in February 2012, two years prior to the expiration of the renewed franchise agreement.  Id.  Defendant Tower had notified Plaintiff about the expiration of the underlying lease before the parties renewed the franchise agreement.  See SAC Ex. 13 at 1.

On February 9, 2011, Defendants informed Plaintiff that she had four days to match a third party offer from "Strada" to purchase the property for $3.2 million.  Id. ¶ 24.  Two days later,

2

**United States District Court**
For the Northern District of California

1  Plaintiff requested an appraisal of the property, but Defendants

2  allegedly refused to respond.  Id. ¶ 26.  The Strada deal

3  apparently fell through and, in April 2011, Forest City West, LLC

4  ("Forest City"), a national real estate developer, acquired the

5  property from defendant Suncor.  Id. ¶ 27.  Plaintiff alleges that

6  she was never given the opportunity to purchase the property on the

7  same terms and conditions as Forest City.  Id.  She also contends

8  that Forest City intends to develop the subject property and will

9  terminate the franchise and evict her when the underlying lease

10  expires in February 2012.  Id.

11      On January 21, 2011, Plaintiff commenced this action,

12  contending Defendants' November 2010 Notice of Nonrenewal violated

13  the PMPA because Plaintiff never received written notice of the

14  duration of the underlying lease before beginning the term of her

15  franchise agreement.  ECF No. 1 ("Compl.") ¶¶ 17-18.  The Court

16  dismissed Plaintiff's Complaint without prejudice, finding that

17  Defendants' withdrawal of the Notice of Nonrenewal and subsequent

18  assent to a new three-year franchise agreement mooted Plaintiff's

19  claims.

20      In the SAC, Plaintiff claims that Defendants violated the PMPA

21  by (1) failing to provide Plaintiff with forty-five days to

22  exercise her right of first refusal to purchase the property; (2)

23  denying Plaintiff's alleged right of first refusal to purchase the

24  property and selling it to Forest City; (3) issuing Plaintiff a

25  sham three-year lease; and (4) selling the property to Forest City,

26  allegedly knowing that the developer will terminate the underlying

27  lease and evict the Plaintiff.  SAC ¶ 30.  Plaintiff also asserts

28  state law claims for specific performance and declaratory relief.

3

**United States District Court**
For the Northern District of California

1    Id. ¶¶ 40-48.

2         Plaintiff seeks an injunction enjoining Defendants from

3    selling the subject property or terminating and/or non-renewing

4    Plaintiff's franchise; an order compelling Defendants to provide an

5    appraisal of the property; compensatory damages under the PMPA;

6    exemplary damages to deter future violations; restitution and

7    disgorgement of illegally gained profits; a declaration regarding

8    the parties' rights and obligations under the PMPA and various

9    factual and legal allegations in the SAC; and attorneys' fees and

10   costs.  Id. at 15-18.

11        Defendants contend that Plaintiff cannot state a claim for

12   violation of the PMPA because her franchise agreement has not been

13   terminated or not renewed.  Mot. at 2.  Defendants also argue that

14   the Court lacks subject matter jurisdiction because Plaintiff's

15   claims for violations of the PMPA fail as a matter of law.  Id.

16   With respect to Plaintiff's state law claims, Defendants contend

17   that Plaintiff has failed to plead facts sufficient to state a

18   claim for specific performance and that Plaintiff's claim for

19   declaratory relief is superfluous.  Id.  Additionally, Defendants

20   contend that, because the court lacks jurisdiction over Plaintiff's

21   claim for violation of the PMPA, the Court cannot exercise

22   supplemental jurisdiction over her state law causes of action.  Id.

23

24   **III.  LEGAL STANDARD**

25        **A.    Rule 12(b)(6)**

26        A motion to dismiss under Federal Rule of Civil Procedure

27   12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

28   Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

**United States District Court**
For the Northern District of California

1  on the lack of a cognizable legal theory or the absence of

2  sufficient facts alleged under a cognizable legal theory."

3  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

4  1988).   "When there are well-pleaded factual allegations, a court

5  should assume their veracity and then determine whether they

6  plausibly give rise to an entitlement to relief."  Ashcroft v.

7  Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a

8  court must accept as true all of the allegations contained in a

9  complaint is inapplicable to legal conclusions.  Threadbare

10  recitals of the elements of a cause of action, supported by mere

11  conclusory statements, do not suffice."  Id. (citing Bell Atl.

12  Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made

13  in a complaint must be both "sufficiently detailed to give fair

14  notice to the opposing party of the nature of the claim so that the

15  party may effectively defend against it" and "sufficiently

16  plausible" such that "it is not unfair to require the opposing

17  party to be subjected to the expense of discovery."  Starr v. Baca,

18  633 F.3d 1191, 1204 (9th Cir. 2011).

19     **B.    Rule 12(b)(1)**

20       When a defendant submits a motion to dismiss under Federal

21  Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of

22  establishing the propriety of the court's jurisdiction.  See

23  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

24  (1994).  As a court of limited jurisdiction, "[a] federal court is

25  presumed to lack jurisdiction in a particular case unless the

26  contrary affirmatively appears."  Stock West, Inc. v. Confederated

27  Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).  A Rule 12(b)(1)

28  jurisdictional attack may be facial or factual.  White v. Lee, 227

**United States District Court**
For the Northern District of California

1   F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the defendant

2   challenges the basis of jurisdiction as alleged in the complaint,

3   while in a factual attack, the defendant may submit extrinsic

4   evidence to address factual disputes as necessary to resolve the

5   issue of jurisdiction, and no presumption of truthfulness attaches

6   to the plaintiff's jurisdictional claims.  Safe Air for Everyone v.

7   Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Thornhill Pub. Co. v.

8   Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  In

9   the instant case, Defendants have brought a facial attack.

10

11  **IV.   DISCUSSION**

12          **A.   Plaintiff's claim for violation of the PMPA**

13          The PMPA was designed to offer additional protections to

14  petroleum products franchisees, such as Plaintiff, to "remedy[] the

15  disparity in bargaining power between franchisors and franchisees."

16  Unocal Corp. v. Kaabipour, 177 F.3d 755, 762 (9th Cir. 1999)

17  (quoting S. Rep. No. 95-731, at 18-19 (1978)).  As such, the

18  provisions of the PMPA are to be liberally construed to protect the

19  interests of franchisees.  Id. at 765.  The PMPA provides that a

20  franchisor may "terminate" or "fail to renew" a franchise

21  relationship only where the franchisor provides written notice and

22  takes the action for a reason specifically recognized by the

23  statute.  15 U.S.C. §§ 2802, 2804.  The PMPA defines the term

24  "termination" to "include[] cancellation."  15 U.S.C. § 2801.  The

25  terms "fail to renew" and "nonrenewal" mean, "with respect to any

26  franchise relationship, a failure to reinstate, continue, or extend

27  the franchise relationship" at the conclusion of the franchise term

28  or following a termination.  Id.   Where a franchisor terminates or

**United States District Court**
For the Northern District of California

1  fails to renew a franchise relationship in violation of the PMPA, a

2  franchisee may bring a civil action in federal court to enforce the

3  provisions of the Act.  15 U.S.C. § 2805.

4       In Mac's Shell Service, Inc. v. Shell Oil Products Co. LLC,

5  130 S. Ct. 1251 (2010), the Supreme Court addressed the

6  circumstances under which a franchisee may bring a claim for

7  improper termination and nonrenewal under the PMPA.  In that case,

8  Shell dealers brought claims against their franchisor for breach of

9  contract under state law and for "constructive termination" and

10 "constructive nonrenewal" of their franchise agreements under the

11 PMPA.  Id. at 1255-56.  The dealers alleged that the franchisor had

12 violated the statute by discontinuing rent subsidies and offering

13 dealers new franchise agreements that calculated rent using a

14 different formula.  The Supreme Court rejected the dealers' PMPA

15 claims on the grounds that the dealers had not abandoned their

16 franchises and had chosen to accept the franchisor's renewal

17 agreements.  Id. at 1258, 1262.  The Court reasoned that "a

18 standard for identifying those breaches of contract that should be

19 treated as effectively ending a franchise even though the

20 franchisee continues to use the franchisor's trademark, purchase

21 the franchisor's fuel, and occupy the service station premises"

22 would be "indeterminate and unworkable."  Id. at 1260.  Further,

23 extending the PMPA to apply to breaches of contract "would be

24 inconsistent with the Act's limited purpose and would further

25 expand federal law into a domain traditionally reserved for the

26 States."[1]  Id. at 1259.

27

28 [1] Ninth Circuit case law is in accord.  See Unocal Corp. v.
   Kaabipour, 177 F.3d 755, 769 (9th Cir. 1999) (PMPA not implicated

7

**United States District Court**
For the Northern District of California

1    Relying in part on Mac's Shell, Defendants argue that

2   Plaintiff's claim for violation of the PMPA fails as a matter of

3   law because Plaintiff has not alleged that Defendants terminated or

4   failed to renew her franchise agreement.  Mot. at 3.  Instead,

5   Defendants argue, Plaintiff has merely pled that Defendants'

6   conduct "amounts to" a termination of the franchise agreement.  Id.

7   at 3-4.  Defendants specifically point to the first paragraph of

8   the SAC which alleges that Plaintiff continues to operate a Union

9   76 branded motor fuel service station on the subject property.

10  Reply at 1.  Defendants contend that the PMPA is inapplicable in

11  such situations.  Mot. at 3-4.

12    Plaintiff counters that this is not a case of constructive

13  termination or nonrenewal, but rather "an actual severance of the

14  relevant legal relationship."  Opp'n at 6.  Plaintiff contends that

15  the franchise relationship has already been terminated because

16  Forest City intends "to commercially develop the property, not to

17  continue to supply [Plaintiff] with fuel, trademarks and branding"

18  and because "[t]he actual franchisor GSM/Suncor/Tower[] now no

19  longer exists, having been destroyed by the sale of the land to

20  Forest City."  Id. at 9.  Plaintiff also argues that this case is

21  distinguishable from Mac's Shell since, in that case, the

22  franchisor did not intend to terminate the gasoline franchise.  Id.

23  at 5-6.  Here, on the other hand, Defendants' intent is allegedly

24  to terminate Plaintiff's franchise agreement.  Id. at 6.  To

25  support her argument regarding Defendants' intent, Plaintiff points

26  _____

    where there was no termination or nonrenewal); Fresher v. Shell Oil
27  Co., 846 F.2d 45, 46-47 (9th Cir. 1988) (dealers could not state a
    claim under the PMPA where they alleged that assignment of their
28  lease agreements would result in termination of their franchises).

to the Notice of Termination issued by Defendants in November 2010;
the "sham lease"; and the sale of the property to Forest City, who
allegedly intends to evict Plaintiff and commercially develop the
property.  Id.

Plaintiff's arguments are unpersuasive.  There is no
indication that Defendants have terminated or failed to renew
Plaintiff's franchise agreement or that there has otherwise been
"an actual severance of the legal relationship."  In fact,
Plaintiff has pled that she "currently operates a Union 76 branded
motor fuel service station" on the subject property, SAC ¶ 1, and
that she recently renewed her franchise agreement with Defendants
for a three-year term, id. ¶ 23.  Moreover, Defendants' sale of the
subject property to Forest City has not destroyed the franchise, as
defendant Tower currently remains the franchisor of Plaintiff's
Union 76 station.  See SAC ¶¶ 5, 23.  Plaintiff has not alleged any
facts showing that the franchise agreement has been terminated or
that Defendants have in any way interfered with Plaintiff's use of
the Union 76 trademark, purchase of fuel, or occupation of the
subject property.  Whether or not Defendants or Forest City will
act to terminate Plaintiff's franchise agreement is a matter of
pure conjecture at this time.

Plaintiff's argument regarding Defendants' purported "intent"
to terminate the franchise agreement is also unconvincing.
Defendants' intent is irrelevant to Plaintiff's claim for violation
of the PMPA.  The pertinent inquiry is whether Defendants have
actually terminated or failed to renew the franchise, not whether
Defendants intend to do so.  Nothing in the Act suggests that a
right of action may be based solely on a franchisor's intent to

**United States District Court**
For the Northern District of California

1  terminate and Plaintiff points to no other authority for support.

2  In any event, a standard for identifying actionable intentions

3  would be just as "indeterminate and unworkable" as a standard for

4  "indentifying those breaches of contract that should be treated as

5  effectively ending a franchise."  See Mac's Shell, 130 S. Ct. at

6  1260.

7       Because there has not been a termination or nonrenewal of

8  Plaintiff's franchise, Plaintiff cannot state a claim for violation

9  of the PMPA.  However, in the interest of thoroughness, the Court

10  addresses each of the PMPA violations alleged in the SAC.

11       Plaintiff alleges that Defendants violated the statute first

12  by failing to provide her with four rather than forty-five days to

13  match the Strada offer and second by selling the property to Forest

14  City before allowing her to exercise her right of refusal to

15  purchase the property.  SAC ¶ 30.  Under certain provisions of the

16  Act, the franchisor is required to "offer[] the franchisee a right

17  of first refusal of at least 45-days duration," but these

18  provisions only apply where there has been a termination or

19  nonrenewal.  See 15 U.S.C. §§ 2802(b)(2)(E)(iii)(I),

20  2802(b)(3)(D)(iii)(II).[2]  When the Strada offer was presented to

21  Plaintiff and when the property was later sold to Forest City,

22  Plaintiff's franchise had not been terminated or non-renewed.

23  Defendants informed Plaintiff she had four days to match the Strada

24  offer on February 9, 2011, two days after they had withdrawn the

25

26  [2] See also Patel v. Sun Ref. & Mktg. Co., 710 F. Supp. 1023, 1023-
    1024 (E.D. Pa. 1989) (defendant did not violate the PMPA by selling
27  the premises to a third party without first offering the franchisee
    the chance to purchase on the same terms since the franchise had
28  been renewed and "no one can state with certainty whether
    plaintiffs will ever face the prospect of nonrenewal").

10

**United States District Court**
For the Northern District of California

1  Notice of Nonrenewal.  SAC ¶¶ 23-24.  Forest City acquired the

2  property about two months later.  Id. ¶ 27.  Accordingly, the PMPA

3  did not require Defendants to provide Plaintiff with forty-five

4  days to match the Strada offer or to provide Plaintiff with the

5  opportunity to purchase the property on the same terms and

6  conditions as Forest City.[3]

7      Next, Plaintiff alleges that Defendants violated the PMPA by

8  "issuing a sham 3 year lease . . . presumably extending the lease

9  term to February 28, 2014, but preserving the right for defendants

10 to terminate the lease when the underlying lease . . . terminates

11 on February 29, 2012."  SAC ¶ 30.  Plaintiff does not point to any

12 provision of the PMPA which would prohibit such an action.  Nor can

13 the Court identify any provision of the PMPA which would preclude

14 the parties from entering into a franchise agreement subject to a

15 lease agreement of shorter duration.[4]  In any event, before

16 Plaintiff voluntarily entered into the renewed franchise agreement,

17 Defendants informed her that the underlying lease for the site

18 expires on February 29, 2012.  See SAC, Ex. 13.  As Plaintiff had

19 notice of the expiration of the underlying lease, the franchise

20

21 [3] Plaintiffs allege that Defendants' refusal to allow her to
   purchase the property on the same terms and conditions as Forest
22 City constitutes a breach of the parties' June 30, 2005 agreement.
   SAC ¶ 26.  While Defendants' alleged breach may be actionable under
23 state law, it cannot support a cause of action brought under the
   PMPA.
24
   [4] Moreover, the PMPA anticipates and allows for situations where an
25 underlying lease expires prior to the franchise agreement.
   Specifically, the PMPA provides for the termination and nonrenewal
26 of a franchise where there is a "loss of the franchisor's right to
   grant possession of the leased marketing premises through
27 expiration of an underlying lease," so long as the franchisor
   provides notice and certain other conditions are met.  15 U.S.C. §
28 2802(c)(4).

**United States District Court**
For the Northern District of California

1  agreement could hardly be considered a sham.

2      Finally, Plaintiff alleges that Defendants violated the PMPA

3  by selling the property to Forest City, "knowing that Forest City

4  will terminate the underlying lease in February 2012 and evict

5  plaintiff."  SAC ¶ 30.  As an initial matter, Plaintiff's

6  allegations are insufficient to raise her "right to relief above

7  the speculative level."  Twombly, 550 U.S. at 555.  Plaintiff

8  pleads no facts to support her conjecture that Forest City will

9  terminate the underlying lease in February 2012.  More importantly,

10  Plaintiff has not pled that her franchise has yet been subject to

11  termination or nonrenewal.  Allegations that Defendants sold the

12  underlying property to a third party who may possibly terminate the

13  franchise agreement in the future, without more, are insufficient

14  to state a cause of action.  See Fresher, 846 F.2d at 46-47.

15      In sum, Plaintiff has not alleged that Defendants have either

16  terminated or failed to renew her franchise agreement and, as such,

17  her claim for violation of the PMPA fails as a matter of law.  If

18  and when Defendants terminate or fail to renew Plaintiff's

19  franchise agreement in violation of the PMPA, she may then bring

20  suit.  Until that time, her action is premature.  As the Court has

21  granted Plaintiff leave to amend once before and Plaintiff's claim

22  fails as a matter of law, this claim is dismissed with prejudice.

23  **B.   Plaintiff's claims for specific performance and**

24  **declaratory relief**

25      Plaintiff also brings two state law claims for relief.  First,

26  Plaintiff brings a claim for specific performance under the

27  parties' June 30, 2005 agreement, which allegedly gives Plaintiff

28  the exclusive option to purchase the premises at the appraised fair

12

**United States District Court**
For the Northern District of California

1  market value.  SAC ¶¶ 40-46.  With respect to this claim, Plaintiff

2  asks that the Court order Defendants to select a mutually

3  acceptable appraiser to appraise the fair market value of the

4  property.  Id. at 43.  Second, Plaintiff brings a claim for

5  declaratory relief, asking the court for a declaration regarding

6  the parties' rights and obligations under the PMPA, whether

7  Defendants' termination/nonrenewal of plaintiff's franchise was in

8  good faith, and various other factual and legal allegations in the

9  SAC.  Id. at 47-49.  Plaintiff alleges that the Court may exercise

10  supplemental jurisdiction over these claims under 28 U.S.C. § 1367

11  because "they are so related to federal claims that they form part

12  of the same case or controversy."  Id. ¶ 11.

13       Defendants contend that both claims fail to state a claim upon

14  which relief can be granted.  Mot. at 9-10.  Specifically,

15  Defendants contend that Plaintiff's claim for specific performance

16  fails because Plaintiff has not alleged why monetary damages would

17  be inadequate or why Plaintiff cannot obtain an appraisal on her

18  own and then seek to recover proportionate costs from Defendants.

19  Id.  Defendants contend that Plaintiff's claim for declaratory

20  relief fails because it is subsumed by Plaintiff's first claim for

21  violation of the PMPA and is therefore superfluous.  Id. at 10.

22       While these arguments may have merit, the Court need not

23  address them because it declines to exercise jurisdiction over

24  Plaintiff's claims for specific performance and declaratory relief.

25  Under 28 U.S.C. § 1367(c), "the district courts may decline to

26  exercise supplemental jurisdiction over a claim" where "the

27  district court has dismissed all claims over which it has original

28  jurisdiction."  As Plaintiff's claim for violation of the PMPA

fails to allege a valid claim for relief under federal law, the Court declines to exercise supplemental jurisdiction over her state law claims.  Therefore, the Court dismisses Plaintiff's claims for specific performance and declaratory relief for lack of subject matter jurisdiction.

**V.    CONCLUSION**

For the foregoing reasons, Defendants Suncor, GSM, and Tower's Motion to Dismiss is GRANTED; Plaintiff Evelyn Poquez's Second Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: September 15, 2011

_____
UNITED STATES DISTRICT JUDGE

14